# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
## No. 20-0585V
UNPUBLISHED

|  |  |
|---|---|
| KATHERINE BELKA,<br><br>                    Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 1, 2022<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Table<br>Injury; Decision Awarding Damages;<br>Pain and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Austin Joel Egan, U.S. Department of Justice, Washington, DC, for Respondent.*

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On May 11, 2020, Katherine Belka filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on September 11, 2018. Petition at 1, ¶¶ 1, 12. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons described below, and after holding a brief hearing on entitlement and damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the amount **$71,569.95**, **representing $68,000.00 for actual pain and suffering, plus $3,569.95 for actual unreimbursed expenses.**

## I.      Relevant Procedural History

After the case was filed, and after engaging in informal settlement discussions from early October 2021 through late March 2022, the parties informed me they had reached an impasse – noting that they were far apart in their valuations of the case. ECF No. 34. I then ordered Petitioner to file a motion for a ruling on the record encompassing both issues of entitlement and damages, and Respondent to file a Rule 4(c) Report or response thereafter. Order, issued Apr. 21, 2022, ECF No. 35.

Over the subsequent four-month period, the parties provided their written arguments. Petitioner's Motion for Ruling on Record ("Motion"), filed June 3, 2022, ECF No. 40; Respondent's Response to Petitioner's Motion and Brief on Damages ("Response"), filed July 22, 2022, ECF No. 43; Petitioner's Reply to Response ("Reply"), filed Aug. 12, 2022, ECF No. 46. In July, I proposed this case for an expedited hearing on August 26, 2022, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. ECF No. 42. The parties agreed, and the expedited "Motions Day" hearing took place as scheduled. ECF No. 44; Minute Entry dated Aug. 29, 2022.[3] During the hearing, I orally ruled on Petitioner's entitlement to compensation, and then made an oral damages determination. This Decision memorializes those findings and determinations.

## II.      Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

---

[3] Substituting for the attorney of Record - Leah Durant, Christopher Williams appeared on behalf of Petitioner, and Austin Egan appeared on behalf of Respondent. As of the date of this Decision, the transcript of the August 26, 2022 Motions Day hearing has not been filed, but my oral ruling is incorporated by reference herein.

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at \*3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at \*5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological

---

[4] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

(i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

## B.  Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table requirement for SIRVA that Respondent contests is the first criterion - whether Petitioner experienced a history of left shoulder pain, inflammation, or dysfunction that would explain her post-vaccination symptoms. Response at 8-9; *see* 42 C.F.R. § 100.3(c)(10)(i). Emphasizing the results of Petitioner's MRI, which revealed conditions not usually associated with a SIRVA injury, plus statements from one of Petitioner's treating physicians, Respondent argued that "[P]etitioner experienced left shoulder dysfunction prior to vaccination." Response at 8.

The results of the MRI (performed on June 1, 2019) revealed bursal and articular surface tearing of the supraspinatus and infraspinatus tendons, glenohumeral joint effusion with moderate synovitis, and circumferential labral tearing. Exhibit 10. After reviewing the MRI results, the first orthopedist to treat Petitioner indicated he "d[id] not feel her pain [wa]s coming from her labral tear" and characterized the possibility that the flu vaccine contributed to the partial tearing of the rotator cuff as "remote." Exhibit 3 at 181. However, he also opined that "[i]t is likely that the placement of the injection contributed to the glenohumeral synovitis that [Petitioner] [wa]s experiencing." *Id.* And the orthopedist recognized Petitioner had not experienced any prior left shoulder pain, remarking that "[i]t is important to note [Petitioner] was not having any shoulder pain prior to this immunization injection." *Id.*

Despite confirming the view that Respondent had raised reasonable points against the claim's adequacy, I ruled in favor of Petitioner at the August 26, 2022 Motions Day hearing. Although Petitioner suffered pain in multiple other locations prior to vaccination,[5] there is a dearth of evidence showing Petitioner suffered prior left shoulder pain or dysfunction. And the probative value of the orthopedist's later statements emphasized by Respondent is diminished by additional statements he made at the same visit - for example, the orthopedist's acknowledgement that Petitioner had experienced no prior left shoulder pain. Thus, I find Petitioner has satisfied this first QAI criterion.

Furthermore, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria and symptoms onset timing required for a Table SIRVA injury following receipt of a flu vaccine. *See* 42 C.F.R. § 100.3(a)(XIV)(B) & (c)(10)(ii)-(iv). Although Petitioner did not complain of her left shoulder pain until 64 days post-vaccination and did not seek treatment until an additional four months thereafter, she consistently attributed her left shoulder pain to the flu vaccine she received, reporting that her pain began immediately upon vaccination. Exhibit 9 at 2; Exhibit 5 at 45; Exhibit 7 at 24; Exhibit 4 at 3 (initial complaints in chronologic order). Additionally, Petitioner's pain and decreased range of motion were limited to her left shoulder. *E.g.,* Exhibit 5 at 45. Although Petitioner experienced unrelated conditions and sources of pain, there is no other condition or abnormality which would explain Petitioner's left shoulder pain. *See supra* note 5.

Thus, and as I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

---

[5] The medical records show that prior to vaccination, Petitioner suffered from right shoulder stiffness and pain, thoracic back pain, and right foot and ankle pain. Exhibit 4 at 34-79; Exhibit 5 at 3-11; Exhibit 6 at 4-10. Her right shoulder and thoracic pain appear to be related to bilateral mastectomies with implants undergone a few years earlier to treat right sided breast cancer suffered in 2013. *Id.* Petitioner attended PT for her right shoulder and back pain as late February 23, 2018 – less than seven months prior to vaccination. Exhibit 6 at 11. And she continued to report these symptoms while seeking treatment for her left shoulder pain post-vaccination. *E.g., id.* at 12 (reporting neck, thoracic/back pain during a PT session on May 1, 2019).

### III.     Compensation to be Awarded

#### A.  Parties Arguments

The parties agree Petitioner should be awarded $3,569.95 for past unreimbursed expenses. Motion Brief at 5 n.1; Opp. at 1-2, 2 n.1, 8. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's pain and suffering.

Maintaining that her SIRVA injury spanned more than four years and continues to the present day, Petitioner seeks $110,000.00 for her pain and suffering. Motion at 13-17. She insists that "all conservative treatment measures aimed at controlling and eradicating [her] vaccine-induced pain were unsuccessful." *Id.* at 13. She favorably compares the facts and circumstances of her SIRVA injury with those suffered by the petitioner in *Cooper*,[6] who received the same amount for pain and suffering - $100,000.00. *Id.* at 16.

Petitioner characterizes her injury as severe, asserting that "[h]er pain was initially severe and has remained moderate to severe" (Motion at 14) and that her condition interfered with her ability to work and to care for her children (*id.* at 15).  She emphasizes the treatment she received – 24 PT sessions and two cortisone injections. *Id.* at 13. Petitioner maintains that her previously suffered breast cancer and continued right arm difficulties equated to a greater SIRVA pain and suffering. *Id.* at 14-15.

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $50,000.00 for her pain and suffering. Response at 11-12. Emphasizing that Petitioner did not report her symptoms until two months post-vaccination, and did not seek treatment until another four months thereafter, Respondent notes that Petitioner's initial pain levels were not severe – zero at rest and four to five when active. *Id.* at 10 (citing Exhibit 7 at 24). He stresses that Petitioner reported 85 percent improvement and pain levels between one to three approximately twelve months post-vaccination.

Regarding the *Cooper* case cited by Petitioner, Respondent argues that Petitioner's delay in seeking treatment was longer, her pain was less severe, and her improvement with PT was greater. Response at 10-11. He proposes *Crefasi* – a proffered case containing greater detail about the facts of that case (due to the accompanying Rule

---

[6] *Cooper v. Sec'y of Health & Hum. Servs.,* No. 16-1387V, 2018 WL 6288181 (Fed. Cl. Spec. Mstr. Nov. 7, 2018).

4(c) Report included with the Proffer) in which the petitioner was awarded $50,000.00.[7]
*Id.* at 11.

In response, Petitioner criticizes Respondent's reliance on *Crefasi* – in effect, a settled case reflecting the parties' tacit agreement about the proper sum of damages to be awarded. Reply at 2-3. She reiterates her assertion that *Cooper* presents a comparable pain and suffering award. *Id.* at 3.

## B.  Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[8]

## C.  Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed declarations,[9] filings, and all assertions

---

[7] *Crefasi v. Sec'y of Health & Hum. Servs.,* No. 15-0166V, 2015 WL 5166283 (Fed. Cl. Spec. Mstr. Aug. 12, 2015).

[8] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[9] Rather than affidavits, all statements provided by Petitioner, her family members, and a co-worker are declarations signed under penalty of perjury as required pursuant to 28 U.S.C.A. § 1746.

made by the parties in written documents and at the expedited hearing held on August 26, 2022. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on August 26, 2022 (which is fully adopted herein), **I find that $68,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

When making this determination, I have considered relevant facts such as the significant delay between vaccination and when Petitioner first sought medical treatment – six months post-vaccination, initial pain which was sharp with movement but much lower, even non-existent, at rest, unrelated prior pain and conditions which may have accounted for some of Petitioner's pain but would also have made her SIRVA injury more impactful. Although Petitioner's delay in seeking treatment did not prevent her from meeting the requirements of a Table SIRVA injury, it is evidence that her SIRVA injury was not notably severe.

By contrast, Petitioner's depiction of a severe SIRVA injury which spanned more than four years is not supported by the record in this case. When making this assertion, she fails to acknowledge her earlier reports of mild to non-existent pain at rest and full ROM with pain only at the extremes. *See* Exhibit 5 at 45, 47; Exhibit 7 at 24. Emphasizing her reported pain level of three at her last PT session, Petitioner fails to note this was the highest level of her pain.

An examination of the record from this October 2nd PT session reveals Petitioner reported pain which ranged from one to zero. Exhibit 8 at 36. And Petitioner reported significant improvement throughout PT sessions in September 2019. For example, by September 3rd, she described increased mobility and the ability to sleep on her stomach. *Id.* at 24. By September 5th, she assessed her condition as 85 percent improved. Most importantly, there is no evidence that Petitioner sought treatment beyond October 2nd, approximately thirteen months post-vaccination. Because the *Cooper* case proposed by Petitioner involves a SIRVA injury with significant pain levels for eight months and an overall duration of more than two years with continued PT throughout, it does not present a helpful comparison for this case. *See Cooper,* 2018 WL 6288181, at *12.

As I stated during the Motions Day hearing, however, Respondent's preferred comparable determination, *Crefasi,* was also an unhelpful comparison. Proffered cases represent an amount which has been agreed upon by the parties and thus, do not present reasoned explanation for why the outcome proposed by Respondent should be applied herein. I previously have rejected Respondent's argument that the amounts awarded in

proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the Court and special masters. *Sakovits*, 2020 WL 3729420, at *4.

Instead, I find that the cases of *Murray* and *Coli* – in which the petitioners were awarded $65,000.00 and $70,000.00, respectively[10] - offer better comparisons to the facts and circumstances in this case. In particular, *Murray* -which involved a mild SIRVA injury lasting approximately one year, with good relief after 15 PT sessions and three cortisone injections – is a very apt comparable. *Murray*, 2020 WL 4522483, at *4-5. I therefore rely on it, although I award a slightly higher figure herein, taking into account the evidence of pain and suffering otherwise offered.

IV.    **Conclusion**

For all the reasons discussed above and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $68,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[11]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $71,569.95, representing $68,000.00 for her actual pain and suffering and $3,569.95 for her actual unreimbursable expenses, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[12]

---

[10] *Murray v. Sec'y of Health & Hum. Servs.,* No. 18-0534V, 2020 WL 4522483 (Fed. Cl. Spec. Mstr. July 6, 2020); *Coli v. Sec'y of Health & Hum. Servs.,* No. 20-0543V, 2022 WL 706682 (Fed. Cl. Spec. Mstr. Feb. 4, 2022).

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master